Ford, Adm'r, v. O'Donnell.

------

ROCHESTER FORD, Administrator of the Estate of JAMES M. O'DONNELL, Respondent, v. MILES O'DONNELL, Defendant, AND MARY R. TALMAGE, Executrix of the Estate of A. A. TALMAGE, Appellant.

St. Louis Court of Appeals, March 18, 1890.

1. **Administration**: ASSIGNMENT OF SHARE OF DISTRIBUTEE. An assignment by a distributee of an estate of his share or interest therein, though made for value, passes such interest subject to the right of the administrator by suit in equity to have it applied to the satisfaction of indebtedness of the distributee to the estate.

2.  Judgment: COMPETENCY, AS EVIDENCE. A judgment obtained
    by such administrator against such distributee is not competent
    evidence of the existence of the indebtedness sued on as against a
    prior assignee of such distributee.

3.  ———: ———. Nor is such judgment rendered competent evi-
    dence of such indebtedness against such assignee by reason of the
    fact that, prior to the rendition thereof, the administrator of
    the estate notified such assignee of the pendency of the suit in
    which the judgment was recovered, and in such notice also
    accorded to such assignee the right to appear in, and defend
    against, such suit.

4.  Witnesses: EFFECT OF DEATH OF A PARTY TO A CONTRACT. Not-
    withstanding the death of a party to a contract, the other
    party is competent to testify in regard to it, when he is neither a
    party of record nor in interest to the suit in which he is called
    to testify, and in no sense testifies in his own favor.

*Appeal from the St. Louis City Circuit Court.*—HON.
DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*H. S. Priest*, for the appellant.

*Silas B. Jones*, for the respondent.

ROMBAUER, P. J., delivered the opinion of the court.

James M. O'Donnell died intestate in the year
1886, and the plaintiff became his administrator. The
defendant Miles O'Donnell, his son, is one of his heirs
and a distributee of his estate. On December 1, 1886,
the defendant Miles, for a valuable consideration,
assigned and transferred all his interest of every kind
in the estate of James M. O'Donnell to A. A. Talmage.
Talmage afterwards died leaving a will, under which
the defendant Mary qualified as executrix.

In October, 1886, the plaintiff, as such adminis-
trator, instituted suit against the defendant Miles on
certain promissory notes, found among the effects of
James M. O'Donnell. In this suit such proceedings

were had, that thereafter, on April 16, 1888, the plaintiff, as such administrator, recovered judgment against Miles O'Donnell for twenty-two. hundred and eighty-three dollars and fifty cents. Afterwards, on December 16, 1887, the plaintiff instituted a second suit against the defendant Miles on additional notes found among the assets, and in such second suit recovered judgment for four thousand and fifty-two dollars and thirty-four cents against the defendant Miles, on February 9, 1888.

On January 16, 1888, the plaintiff notified the defendant executrix in writing, that he had instituted these two suits, that it was his purpose to prosecute them to judgment, and to have the judgments obtained satisfied out of the interest of Miles O'Donnell in his father's estate, in preference to any claim advanced by the executrix as assignee. He further notified her that he had no objection to her appearing and making any lawful defense to said actions or either of them. The executrix did not appear; Miles O'Donnell made no defense whatever; and these judgments were obtained by default.

The plaintiff administrator, being thereafter ready to make final settlement and distribution, and the distributive share of said Miles in the estate in the hands of the administrator for distribution amounting to less than two thousand dollars, the plaintiff applied to the probate court for leave to apply the said distributive share to the payment *pro tanto* of the judgment, which he as administrator held against Miles. The probate court so ordered, and the defendant executrix appealed from the order successively to the circuit court and this court. We reversed the judgment of the circuit court, which was to the same effect as that of the probate court, and, in doing so, we held that the probate court was without jurisdiction to make the order which it attempted to make; that the matter of adjusting equities on final distribution was strictly of equitable

cognizance, of which the circuit court alone had original jurisdiction. The case on its former appeal is reported in 36 Mo. App. 65, where the facts of the case, and the grounds of our decision, are set out in full.

The plaintiff thereafter instituted the present proceeding against Miles O'Donnell and the defendant executrix in the circuit court, reciting in his petition the facts hereinabove set out, and concluding as follows: "Premises considered, the plaintiff invokes the exercise in his behalf of the equitable powers of this court; and prays that it be adjudged by this court herein that the said distributive share of Miles O'Donnell, in the personal estate of James M. O'Donnell, deceased, be retained, held and applied by the plaintiff in payment and satisfaction *pro tanto* of the debts aforesaid of the said Miles O'Donnell to the estate of the said James M. O'Donnell, deceased, and that the said distributive share of the said Miles O'Donnell, so adjudged to be held and applied in payment of said debts as aforesaid, be adjudged to be distributed by plaintiff to the other heirs and distributees of the estate of the said James M. O'Donnell; and plaintiff prays for such other and further and general relief in the premises as may appear proper to the court."

The defendant Miles O'Donnell made no answer, but suffered default. The defendant executrix answered, stating the assignment to her decedent for value, long prior to the recovery of these judgments, by Miles O'Donnell, of his entire interest in his father's estate. The defendant further answered that the notes, forming the foundation of the judgments recovered against Miles O'Donnell, were notes given to James M. O'Donnell without any consideration whatever being received therefor by said Miles, or any other person, and were mere accommodation notes; that these facts were well known to Miles O'Donnell, and that he had a perfect

defense to these actions, but permitted judgment to go against him therein fraudulently and collusively for the purpose of defrauding the estate of A. A. Talmage of all benefit, which would accrue to said estate under the assignment made by him of all his interest as heir of his deceased father.

Upon the trial of the cause before the court below, the plaintiff gave evidence of the facts stated in his petition. He first offered in evidence the record in the cause wherein the judgment for twenty-two hundred and eighty-three dollars and fifty cents was recovered. It appeared from said record that the suit was brought upon three promissory notes, all signed by H. Cook & Co., and payable to the order of James M. O'Donnell, Hugh Cook and Miles O'Donnell being charged in the petition as partners. In connection with the record the plaintiff offered in evidence said three notes. The defendant executrix objected to this evidence for the reason that, if the bill in this case counts upon the notes, then the notes are merged into the judgments, and the action is upon the judgments, and not upon said notes. As to the judgments offered in evidence the defendant objected, because they were *res inter alios acta* and only affected the persons who were parties to that suit, and could in no way affect the interest of Mrs. Talmage acquired before such judgments were rendered. The court overruled these objections, and admitted the judgment and notes in evidence, and the executrix excepted.

The plaintiff then offered in evidence the record in the cause wherein the judgment for four thousand and fifty-two dollars and thirty-four cents was recovered, and, in connection with such judgment, two notes and one check, all signed by H. Cook & Co., and payable to James M. O'Donnell. The same objection was urged and the same ruling was made by the court, the defendant saving her exception. In ruling on this evidence

the court observed : "I will let the notes in, but, in summing up the case, the question will be *whether plaintiff has sufficiently proven an indebtedness; whether the proof put in evidence and the pleadings show an indebtedness from Miles O'Donnell to James O'Donnell.*"

Other evidence was offered by the plaintiff, showing admissions of Miles O'Donnell and Hugh Cook of the indebtedness hereinabove stated to James M. O'Donnell, but, as the evidence was clearly incompetent, unless it be for the impeachment of Hugh Cook's evidence as hereinafter stated, and as the record fails to show that the court admitted the evidence, the subject need not be considered.

The plaintiff also gave in evidence the written notice, served upon the executrix while the suits against Miles O'Donnell were pending, and referred to in a prior part of this opinion. He then proved by his own evidence that he knew personally nothing of the indebtedness of Miles O'Donnell to his father, except what appeared from the notes and check sued upon ; that, finding these obligations among the effects of James M. O'Donnell, he considered it his duty to inventory them, and to seek to collect them ; and that, in so doing, he did not confer with any members of James M. O'Donnell's family, nor with Hugh Cook.

On cross-examination of the plaintiff it was shown that, when the first suit was instituted, Miles O'Donnell filed an answer denying any indebtedness to his father, and stating that these obligations were executed by the firm of H. Cook & Co., for the accommodation of James M. O'Donnell, without any consideration whatever, to enable him to raise money thereon, and that all matters between himself and James M. O'Donnell had been adjusted prior to the decease of the latter, he, the said Miles, receiving a full release of all claims from his father. This answer was filed December 7, 1886, a few

days after the assignment by Miles O'Donnell of his interest in his father's estate to Talmage, and was withdrawn April 16, 1888.   On the last-named day the defendant Miles signed the following paper seemingly at the request of the counsel of the plaintiff in this cause:   "Now comes the defendant Miles O'Donnell, and withdraws his answer in this case, and declines to answer further the petition of the plaintiff."   No answer was ever filed in the second suit upon the notes.   In the present suit Miles O'Donnell entered his voluntary appearance, waiving service, but did not answer.

The defendant executrix then called Hugh Cook, who testified in substance as follows :   He was requested to come to the city of St. Louis by James M. O'Donnell, who agreed to pay him a salary of thirty-five dollars per month and his board for work in a boot and shoe store, in which the defendant Miles was engaged.   When he came he found the sign H. Cook & Co. over the store. He had no interest in the store, but was simply an employe of James M. O'Donnell.   All the notes, signed by him in the name of H. Cook & Co. were signed at the request of James M. O'Donnell, and, as far as he knew, H. Cook & Co. received no consideration for any of them, and never borrowed any money from James M. O'Donnell or any one else.   As far as he knew, Miles O'Donnell never borrowed any money from his father. He, the witness, merely loaned his name to Miles O'Donnell, at the request of his father, and was a mere figure head, knowing nothing whatever about the finances, and signing all the notes by order of James M. O'Donnell.

When this testimony of Cook was offered, the plaintiff objected to it on the ground that, Cook being one of the original parties to the contracts to which James M. O'Donnell was the other party, he was incompetent to testify owing to the death of James M. O'Donnell.   The court ruling on this objection said :   "I will take this testimony subject to objection, my present impression

being that the objection is well taken." As it does not appear by any subsequent part of the record that this evidence was admitted by the court, we must conclude that the court adhered to its original opinion, and did not consider the evidence in passing upon the case.

Upon this evidence the court made a finding and decree according to the prayer of the petition. In doing so, the court admitted in evidence the judgments rendered against Miles O'Donnell in favor of the administrator, on the ground that nothing passed by the assignment, except such interest as Miles has in his father's estate, subject to the claims of the estate against him, and hence the defendant executrix had a direct interest in the ascertainment of the question, what that interest was, and, having declined to appear and defend when notified, was precluded by the judgments. While the court's opinion does not indicate whether it considered the judgments conclusive or only *prima facie* evidence of the indebtedness, the necessary logic of its ruling is that they were conclusive, and not subject to impeachment in this proceeding.

The executrix, appealing, assigns for error that the court erred in holding that the equities of the administrator were superior to hers as assignee of Miles' share in the estate; that the court erred in admitting the judgments in evidence, and further erred in deciding that the judgments, under all the evidence in the case, proved an indebtedness on the part of Miles O'Donnell to his father's estate, greater than the distributive share of Miles O'Donnell, or that it proved any indebtedness. We shall proceed to consider these objections in the above order, premising such consideration with the statement, that, as the proceeding is one in equity, the decree is subject to review here on the weight of the evidence.

When the case was last here we said, in considering the point first presented: "There can be no question that, under certain circumstances, the right exists to

deduct from the distributive share of one of the heirs any indebtedness due from the heir to the deceased *at the time of death* and remaining unpaid;" and, again: "We think that the true ground on which this doctrine rests is the equitable right of the administrator, by appropriate proceedings, to *impound* the interest of the distributee, and by decree of court to have the debt, if larger than the distributive share, paid *pro tanto*, by applying the amount due on distribution as a credit thereon. *Ballard v. Marsden*, 14 Chan. Div. 374."

The defendant executrix now claims that her decedent is an assignee for value; that the amount is not needed for the payment of debts, and that her equities are, therefore, superior to those of other distributees, who are mere volunteers, and for whose benefit alone the administrator now seeks to make the collection. The vice of this argument lies in the fact that it rests for support exclusively on the proposition that the decedent was an assignee for value. It is immaterial whether he was an assignee for value or not, as he could in no event obtain any greater right by the assignment than his assignor could convey. If his assignor, at the date of the assignment, was indebted to the estate, the administrator had a legal right to proceed against him, to prosecute the claim to judgment and to enforce such judgment against any property of the assignor. The administrator's equity rests in the fact that, during administration, and until the distributive share is ascertained, he is remediless to enforce such claim either in law or equity, in default of other property of the debtor, although the assets are in his hands all the time, and, if the amount were ascertained, he might offset one debt against the other, if sued. An assignment of a distributive share is not a conveyance of tangible property, but the assignment of an unliquidated claim, which is always subject to cross demands existing at the date of

the assignment. The administrator by this proceeding simply seeks the enforcement of a legal right, for which he had no legal remedy. We must rule this assignment of error against the appellant.

The next assignment is that the court erroneously admitted in evidence the judgments recovered by the administrator against Miles O'Donnell. As above seen, the court upon the trial of the cause properly held that the plaintiff's case depended upon making sufficient proof of the indebtedness of Miles O'Donnell to his father's estate, to which we add the qualification "at the date of his father's decease," because it could not be contended that, if such indebtedness accrued after the assignment and notice thereof to the administrator, he could enforce it against the distributive share of Miles O'Donnell.

The record entry of a judgment is of course always evidence of the fact that a certain judgment had been rendered, and for that purpose it is competent evidence, whoever are the parties to the litigation. As the plaintiff's standing in a court of equity, under the decisions in this state, as against the defendant, depended upon the fact that the claim had been liquidated by judgment, it was further competent for the purpose of showing that the claim had been thus liquidated. We, therefore, do not see what harm was done to the defendant executrix by admitting these judgment entries in evidence, all the more so since her answer admits that these judgments were recovered. It is not in admitting these entries, but in giving to them a certain effect that the court erred, if at all.

Our statute provides (section 3465, Revised Statutes, 1879) that any person may be a defendant, who has or claims *an interest in the controversy* adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question *involved therein.* Now the executrix in this case did not claim

any interest in the controversy between the plaintiff and Miles O'Donnell in the suit upon these notes. Those suits did not seek to enforce a lien against any property she held or claimed, nor was she a necessary party to any question involved therein. We might as well hold that one may in an action upon a promissory note make the grantees of the defendant parties co-defendant with him, simply because it is his ultimate design, after he recovers judgment, to levy such judgment upon property conveyed to them, and vacate such conveyances on the ground that they were fraudulent as to the creditors of the grantor. It would be still more illogical to hold that one may, in such a suit by a simple notice requesting grantees to come in and defend the suit, in the direct and immediate result of which they had no interest whatever, forever preclude them from questioning the validity of the judgment therein obtained, as far as they are concerned. And the latter proposition is the one which the court seems to have sanctioned in this case.

There are, of course, many cases arising upon warranties, reinsurance, mechanics' liens and other similar transactions, wherein the warrantor, reinsurer, contractor or other party owes a direct duty to the grantee, insured, owner or other party sued, and wherein, by the common law, terms of the contract or by statute, it is made the duty of the party notified *to hold the party sued harmless* from the effects of the judgment sought to be recovered against him, and wherein a judgment becomes conclusive against the party notified and failing to defend. *Strong v. Phœnix Insurance Co.*, 62 Mo. 289, cited by the trial court in its opinion, is only one of the numerous cases on that subject. But in all these cases the party notified was by law or contract placed under some obligation to the party sued, which is not the fact in this case; see *Wangler v. Franklin*, 70 Mo. 659, 661. We must conclude, therefore, that the court erred

in holding that the executrix was precluded by these judgments, because she failed to appear and defend upon notice, or that, as to her, they were proof of any indebtedness existing by Miles O'Donnell to his father's estate, anterior to the date of the assignment. The mere fact that the result of that litigation might affect her interest in some manner thereafter did not take these judgments out of the general rule, which makes judgments, to which she was no party, inadmissible as *res inter alios acta.* *Wise v. Wimer*, 23 Mo. 237; *Norcross v. Hudson*, 32 Mo. 227, 229; *Cravens v. Jameson*, 59 Mo. 68; *Middleton v. Railroad*, 62 Mo. 579; *Strauss v. Ayres*, 87 Mo. 348, 350.

This brings us to the question whether the decree is supported by the weight of the evidence in other respects. The plaintiff offered in evidence the notes on which the judgment was founded, and the court admitted them against the defendant's objections. *Prima facie*, such written promises import a consideration both by the law merchant and our statute. In a proceeding by an indorsee for value before maturity, they are conclusive evidence both as to consideration and amount of value; as, between the original parties thereto, they are *prima facie* evidence of both, subject to impeachment. But it is difficult to see on what principle they can be evidence of amount of value, where the controversy is between the holder and a stranger to the paper, unless their admissibility can be supported on the theory that they are admissions against interest. If admissible at all, their weight as evidence rests on the most slender foundation.

To rebut whatever little weight there might be given to these notes as evidence of any debt, the defendant called both Chas. F. O'Donnell and Hugh Cook, who testified to facts leading to the almost unavoidable inference, that all these obligations, with the exception of two, amounting in the aggregate to one hundred and

thirty dollars, were mere accommodation paper, and that the plaintiff's decedent gave no value for them. From what the court intimated upon the trial, it would appear that it rejected the testimony of Cook on the ground that he had become an incompetent witness, owing to the death of James M. O'Donnell, the other party to the contract. That view rests on a misconception of the law. A party to the contract, when the other party is dead, is incompetent under the statute only to testify *in his own favor*. R. S. 1879, sec. 4010. He is competent to testify, both at common law and under the statute, when he is neither a party to the record nor a party in interest, and when he testifies in no sense *in his favor*. *Angell v. Hester*, 64 Mo. 142; *Ring v. Jamison*, 66 Mo. 424, 429; *Meier v. Thieman*, 90 Mo. 433; *First National Bank v. Hunt*, 25 Mo. App. 170, 173. In the case at bar Cook was neither a party to the record, nor had he any interest whatever in the controversy, nor did his testimony in any way affect his liability, which had been fixed by previous judgments. Hence he was not disqualified as a witness for any purpose. If the defendant executrix had called Miles O'Donnell as her witness, the case would have been different, as he was both a party to the record and a party in interest within the decision of *Meier v. Thieman, supra,* as he conveyed his interest in the estate to the defendant's decedent, as the record shows, accompanied with a sworn declaration as to the extent of such interest. This, however, does not prevent the plaintiff from calling him as a witness, and his testimony in the present state of the controversy seems to be almost indispensable to a full understanding of its true merits.

The foregoing observations lead to a reversal of the judgment. At the same time we do not feel justified to make a final decree in the present state of the record. The case was tried under a misconception of the law, and not in a manner to elicit the true facts upon which

the rights of the parties depend. The judgment is reversed and the cause remanded to be proceeded with in conformity with this opinion. In reversing the judgment all the judges concur; in remanding the cause, Judge BIGGS concurs. Judge THOMPSON is of the opinion that the notes offered in evidence by the plaintiff were no evidence whatever of any indebtedness on the part of Miles O'Donnell, and that we should terminate the litigation here by dismissing the bill. Whether such notes are *prima facie* evidence of consideration, or not, has not been discussed in argument by either party, and hence the majority of the court do not desire finally to commit themselves on that proposition either way, and are of opinion that the facts and the law on that question should be fully brought before the court before entry of a final decree.