THOMAS S. HOPKINS, Adm'r, *et al.*, Respondents, v. DAVID W. THOMPSON *et al.*, Appellants.

Kansas City Court of Appeals, January 24, 1898.

Descent and Distribution: DISTRIBUTIVE SHARE OF INDEBTED HEIR: EQUITABLE OFF-SET: REAL ESTATE. [An administrator has the equitable right by appropriate proceedings to impound the interest of a distributee and by a decree of court to have the debt, if larger than the distributive share, paid *pro tanto* by applying the amount due on distribution as a credit on such debt, and it can not make any difference that the distributable fund arose from the sale of real estate of the decedent.

*Appeal from the Pettis Circuit Court.*—HON. HENRY LAMM, Special Judge.

AFFIRMED.

*Barnett & Barnett* and *Jas. Humphreys* for appellants.

(1) The court erred in finding for plaintiffs, as under the pleadings and evidence the decree should have been for the defendants. (2) The proceeds of the sale of the land in question, under the Rissler deed of trust, in the hands of the trustee, after the discharge of the mortgage debt, was real estate, and one half of such surplus proceeds was subject to the lien of defendants' judgment against said James S. Hopkins. *Jewell v. Knettle*, 39 Mo. App. 262; *Pococke v. Pococke*, 2 Mo. App. 118; *In re Estate of Lloyd*, 44 Mo. App. 670; Woerner on Adm., pp. 1233, 1070. (3) Before the right to apply the distributive share of the heir to payment of his debt can exist, his indebtedness to the estate must have existed at the time of death of the intestate. *Ford v. O'Donnell*, 40 Mo. App. 59.

*Montgomery & Montgomery* for respondents.

(1)  The heirs of Mary Hopkins, deceased, were entitled to share equally in the estate inherited from her.  R. S. 1889, sec. 4465.  James S. Hopkins, having already received largely more than his share of the estate, the administrator of Mary Hopkins might rightfully recover the surplus in controversy to make equal *pro tanto* the distributive share of Cora V. Hopkins, and the  proper proceeding was by a bill in equity. *Ford's Adm'r v. O'Donnell*, 36 Mo. App. 66; s. c., 40 Mo. App. 51; Pomeroy's Equity, secs. 161, 1159.  (2) The lien of the defendants' judgment was general, not specific.  He did not deal with this specific property out of which the fund arose, nor has he parted with value in contemplation of it.  That lien only extends to whatever interest his debtor  really had in the property and is subject to all the equities in it existing at the date of the judgment.  *Hope v. Blair*, 105 Mo. 95; *Davis v. Ownsby*, 14 Mo. 171; Black on Judg., secs. 420, 445.  (3)  The equity of the heirs to equal distribution is superior to that of a general judgment creditor against one of the heirs who has received more than his due proportion.  *Nelson v. Murphy*, 69 Ala. 594; *Koon's Adm'r v. Mellett*, 121 Ind. 585; s. c., 7 L. R. A. 231 and note; *Fiscas Adm'r v. Moore*, 121 Ind. 547; s. c.; 7 L. R. A.  235; *Wallace v. Keyser*, 51 Pa. St. 493; *Brown's Adm'r v. Mattingly*, 91 Ky. 275; s. c., 15 S. W. Rep. 353; *Streety v. McCurdy*, 104 Ala. 499; s. c., 16 So. Rep. 686; *In re Donaldson Est.*, 158 Pa. St. 292; s. c., 27 Atl. Rep. 959; *Foltz v. Wert*, 103 Ind. 404; s. c., 2 N. E. Rep. 950; *Linginger v. Field*, 78 Wis. 367; s. c., 47 N. W. Rep. 613; *Lang v. Brown*, 21 Ala. 179; s. c., 56 Am. Dec. 245; *Button v. Allen*, Hals. Ch. 99; s. c., 43 Am. Dec. 630; *Ernest v. Ernest*, 5 Rawle Ap. 9 Watts, 353; *Snyder v. Waubasse*, 11

N. J. Eq. 474; *Lafoy v. Campbell*, 42 N. J. Eq. 34; s. c., 6 Atl. Rep. 300.

SMITH, P. J.—Mary S. Hopkins died intestate leaving surviving as her heirs at law, her father, Jas. S. Hopkins, and her sister, Cora V. Hopkins.

STATEMENT. Her entire estate consisted of five hundred and seventeen acres of land. Thomas S. Hopkins, plaintiff, was appointed administrator of her estate. The intestate was bound as surety for her father on various notes amounting to nearly $10,000 which notes were allowed against her estate. There being no sufficient personal assets with which to discharge said debts, two hundred and sixty acres of the intestate's land were sold by the administrator under an order of the probate court and out of the proceeds of the sale the indebtedness was discharged by him. The remainder of the intestate's land, two hundred and fifty-seven acres, was incumbered by deed of trust which had been executed by the intestate to defendant Longan, as trustee, to secure a note of $5,000 dollars given by the father and on which the intestate was surety. After the death of the intestate default was made in the payment of said note at its maturity, and accordingly the trustee sold the land under the deed of trust, and the proceeds arising from the sale were sufficient to pay off the debt and costs of the trust and leave a surplus in his hands amounting to $2,260. One half thereof was paid by him over to the administrator and the other half thereof, being claimed by defendant Thompson, was retained.

Before the trustee's sale took place Thompson recovered a judgment against the father for $787, and subsequently sued out an execution on his judgment and caused the trustee to be garnished therein. The trustee filed his answer setting forth the facts in rela-

tion to the sale under the deed of trust substantially as has already been stated by us, and further therein informed the court that the fund in his hands was claimed by both the administrator and Thompson. The court made the usual order in such case requiring the claimants to interplead in the cause.

The administrator filed his petition alleging that the father was indebted to the estate of his deceased daughter, and consequently to him, the administrator, on account of the discharge by the former of the several debts of the latter, out of the assets of said estate. The insolvency of the father was alleged. It was prayed that an equal and fair distribution of the decedent's estate be made between the said Cora V. Hopkins, the surviving daughter, and the father, and that the whole of the indebtedness of the latter to the intestate's estate be declared an asset of said estate, and charged upon distribution to the father as his part or his share, and that before any part of the intestate's estate be taken by the father or his creditors that the same should be used in equalizing the distribution between the two heirs of the intestate. There was a further prayer that the administrator have judgment against the trustee for the said fund in his hands, or if it had been paid over to 'the clerk of the court in accordance with a previous order of the court that the clerk be ordered to pay it over to the administrator, and that the rights of the father and Thompson of, in and to the fund be by the decree fixed and determined as inferior to that of the administrator, and for other proper relief.

The defendant Thompson, in his answer, claimed a lien on the fund in the hands of the trustee and prayed the court to decree that the lien of his judgment against the father be declared a lien on the funds in the hands of the trustee, or so much thereof as was

necessary to discharge his judgment, and for other proper relief. The trustee, during the progress of the hearing, paid the fund in his hands into the court and and was discharged.

The decree of the court was, in effect, that the clerk pay over the fund to the administrator, and that the latter distribute the same to the heirs of the estate of the decedent according to their respective interests, and that since it appeared from the evidence that the father had received from the estate of the intestate the sum previously herein stated, and that there had been advanced and paid that sum upon his distributive share, it was therefore ordered and decreed that in the distribution of said sum, paid into court by the trustee, between the father and the daughter as the sole heirs of the intestate, that the administrator charge up against the father upon his distributive share the said sum so paid by said estate in discharge of his said indebtedness. The defendant has appealed.

The question which now requires our decision is whether the decree of the court below can be sustained. There can be no question that under certain circumstances an administrator has the equitable right, by appropriate proceedings, to impound the interest of the distributee, and by decree of court to have the debt, if larger than the distributive share, paid *pro tanto* by applying the amount due on distribution as a credit thereon. *Ford v. O'Donnell*, 40 Mo. App. 51; *Ballard v. Marsden*, 14 Ch. Div. 374. The authorities are quite agreed that an administrator has the right to subject the personal property of his intestate to the payment of a debt due by the heir to the estate in priority and preference to the claims of an assignee of the heir. *Streety v. McCurdy*, 104 Ala. *loc. cit.* 501; *Fiscus v. Moore*, 121 Ind. *loc. cit.* 556.

DESCENT: and distribution: distributive share of indebted heir: equitable off-set: real estate.

In section 564 of Woerner's American Law of Administration it is stated: "The indebtedness of a legatee or distributee constitutes assets of the estate, which it is the executor's or administrator's duty to collect for the benefit of creditors, legatees, and distributees. Hence such indebtedness may be deducted from any legacy or distributive share of the debtor. * * * The right of set-off exists whether the legatee or distributee was indebted to the deceased before his death, or contracted a liability to the estate, or even the administrator personally, thereafter. So it is held a son is not entitled to recover his distributive share of his father's estate, where the father was surety for him in an amount greater than the value of said share, although the executor did not pay the surety debt until after the action brought by the son." It matters not that the debts were paid since the death of the intestate, as they were contingent liabilities of hers on the payment of which by the admistrator an equity arose which related back to the time of the death of the intestate. In *Manifold's Estate*, 5 Watts & Serg. 340, it is thus seen that the debt of the father to the estate of his daughter in the present case is embraced within the class of debts which are referred to by the court in *Ford v. O'Donnell, ante*, where it was said that the equitable right of an administrator exists "to deduct from the distributive share of one of the heirs any indebtedness due from the heir to the deceased at *the time of his death* and remaining unpaid."

But it is contended that the fund in dispute is part of the proceeds arising from the sale of certain real estate of the intestate, and that therefore the equitable doctrine of retainer or set-off, as it is sometimes termed, does not extend to such proceeds. And this contention has the support of many authorities of the highest respectability. *La Foy v. La Foy*, 43 N. J. Eq. 206;

*Smith v. Keaney*, 2 Barb. Ch. 533; *Sarter v. Beaty*, 25 S. C. 293; *Proctor v. Newhall*, 17 Mass. 81; *Campbell v. Martin*, 87 Ind. 577. It was affirmed by the Vice Chancellor in *Wright v. Rose*, 2 Simons and Stuart's Chancery Reports, 323, and re-affirmed by him in *Bourne v. Bourne*, 2 Hare's Chancery Reports, 35, that where a mortgage deed contains a power of sale with direction that the surplus produce shall be paid to the mortgagor, his executors or administrators as here, if a sale takes place in the lifetime of the mortgagor the surplus is personal estate; but if such sale does not take place until after his death it is real estate. And in *Jewell v. Knettle*, 39 Mo. App. 262, where the real estate of the intestate had been sold after his death under the provisions of a deed of trust previously executed by him and the surplus remaining after discharging the trust debt had been paid over by the trustee to the administrator, it was held by us that inasmuch as such surplus represented the realty for the benefit of the heirs, it could not be merged in the personalty for the purposes which only pertain to that classification. Citing *In re Motier's Estate*, 7 Mo. App. 514; *Ritchey v. Withers*, 72 Mo. 556; *Drowry v. Bauer*, 68 Mo. 155; Woerner's Am. Law of Adm., sec. 91.

But ought it to make any difference that the fund in question arose from the sale of real estate? In *Koons v. Mellett*, 121 Ind. 585, it was held by the majority of the judges of the court that one who had obtained a judgment against the devisee of real estate, which was afterward sold in pursuance of the terms of the will, acquired no better right to participate in the proceeds than the devisee himself had, and that the administrator had the same right to set off a debt due from the devisee to the estate as if the latter himself were claiming to participate in the fund. And to the like effect are *Streety v. McCurdy, ante; Manifold's*

*Estate,* 5 Watts & Serg. 340; *Springer's Appeal,* 29 Pa. St. 208; *Strong v. Bass,* 35 Pa. St. 333; *Nickerson v. Chase,* 122 Mass. 296; *Snyder v. Warbasse,* 11 N. J. Eq. 463; *Smith v. Smith,* 13 N. J. Eq. 164.

At common law the title to real property vested absolutely in the heirs upon the death of the ancestor and it could not be made an asset for the payment of debts. But under our statute it descends to the heir, but he does not take an absolute title. Pending the settlement of the estate of his ancestor the descent is subject to be interrupted or defeated, either when the personal representative makes it appear the sale is necessary to make assets for the payment of the debts of the ancestor or where it is incumbered by mortgage, deed of trust or other lien and there are no personal assets of the estate out of which the incumbrance or lien can be discharged. A sale in either way will pass the title and divest that of the heir. And such a conveyance will not be affected by a prior transfer made directly by the heir himself, or under a prior judgment against him. The real and personal property of an intestate under our statute descends to the same persons and in the same proportions and are both equally chargeable with the payment of his debts, with the exception that the personal estate must be exhausted first. *Nelson v. Murfee,* 69 Ala. 598; *Fiscus v. Moore,* 121 Ind. 547. And so it has been declared in a recent Alabama case, *Streety v. McCurdy, ante,* that under the statutes of that state, "realty is upon the same footing as personalty in this respect and that all the property of an estate—land, chattels and choses in action alike—constitute a fund first for the payment of debts of the estate by the subjection thereto of the personalty and realty in the order stated, and next for distribution to or division among the heirs of the residue. * * * And where an heir or distributee was indebted

to the ancestor in his lifetime and continues so indebted to his estate, this debt to this chose in action held by the estate, is assets in the hands of the administrator both for the payment of the debt of the decedent and for the purpose of distribution; and both personalty and realty, including in the case supposed the debt of a distributee to the estate, being a common fund for equal distribution, either by allotment or a sale and division of proceeds among all the distributees, those not indebted to the estate are entitled to have the sum due from one who is so indebted collected from him, or, failing in this, they have a right to share in the assets as if such collection had been made and the debtor distributee shares in the estate only upon the like assumption of payment by him. So that if his debt is equal to or greater than the value of one share in the distributable estate, including the claim against him, and that claim is not paid by him, he is never entitled to anything from the estate.  *  *  * It can not be doubted that this right of the administrator in behalf of the heirs and of such heirs themselves to set off the distributive interest of the debtor heir in the lands of the ancestor, or to subject such interest to the payment of the debt of the estate as against third persons claiming as judgment creditors of the heir, is of equitable cognizance.''

The case of *Brown's Adm'r v. Mattingly et al.*, 91 Ky. 275, was one in which the judgment creditor had attached the interest of the debtor heir in the lands of his ancestor and his effort to assert that lien was resisted by the other heirs upon the ground that the debtor heir was at the time of his ancestor's death indebted to him in a larger sum than the value of such heir's interest in the real estate and it was relied upon as a set-off. Among other things, the court says: ''But it is said that the right of set-off by the adminis_

trator only applies to the extent of extinguishing the distributee's interest in the personal estate; and as the land descended directly to the heirs, it was right to sustain the attachments to the extent that they were levied upon J. A. Brown's (the debtor heir) interest in said land. It may be a point, however, that we do not decide that the appellant, as administrator, had no right to rely upon the set-off, except to the extent of extinguishing the distributee's interest in the personal estate. But it is clear that the distributee's interest in the real estate should be extinguished to the extent that the amount he has received from the ancestor exceeds his interest in the personal estate. He stands in the attitude of having received so much from the estate, and if his distributive share in the personal estate is not equal to the amount thus received, the real estate ought to be held to be charged with the payment of the remainder in the division and he to receive that much less. This is the only equitable rule; were it otherwise the one heir might virtually get a double or treble portion." See, also, *Donaldson's Estate*, 58 Pa. St. 292.

It is not in the power of a third person to impair or embarrass the personal representative in the settlement of an estate by dealing with the heirs upon the supposition that their interest is of a fixed or certain character. Nor can the other heirs be deprived of some portion of their estate by the intervention or intermeddling of a stranger so as to destroy the equality of descent and distribution. And until the estate is finally settled every one is bound to know that the sale of the real estate may become necessary in order to make assets for the payment of debts and he is bound to know when the land is converted into money, by operation of law it becomes money assets and is subject to all the incidents of other assets

regardless of the source from which it was derived. *Fiscus v. Moore, ante; Feltz v. Wertz,* 103 Ind. 404; *McCandler's Appeal,* 98 Pa. St. 489.

It will be remembered that the father and daughter were tenants in common as to the five hundred and seventeen acres of land inherited by them from their intestate. Each owned an undivided moiety thereof. If the contention of the defendant Thompson that the equitable doctrine of retainer or set-off does not extend to the case can be upheld the result will be that the daughter instead of securing one half of the land or the proceeds arising from the sale thereof, amounting to about $17,000, will receive only about $1,130, while her father and cotenant will get the benefit of nearly the entire proceeds of the sale, or nearly $16,000. On the other hand, if we extend and apply the doctrine just referred to, the result will be far more in consonance with justice, and will enable the daughter to receive at least a modicum of what she ought to have received, but for the exhaustion of the assets of the estate of the intestate in the payment of the debts of her father.

It frequently occurs that the assets of an estate consist largely of debts due from some of the heirs to the ancestor, supplemented with a small amount of real estate, such as the homestead. If the indebted heir can upon the death of the ancestor convey or incumber in any way his interest in the real estate so that after paying the debts of the ancestor his grantee, mortgagee or creditor might participate in the surplus equally with the other heirs who were not indebted the most manifest injustice and inequality would result. The law always presumes that an ancestor meant that his heirs should share equally in his estate. *Rusch v. Beery,* 110 Ind. 444. No case can well be imagined where the reasons calling for the application of the

equitable doctrine of retainer or set-off are more cogent than in the present.  If the circuit courts in the exercise of their chancery jurisdiction are powerless to make application of this doctrine or to afford relief in a case like this, then indeed that jurisdiction is but a mockery and a deception and the sooner they are stripped of it and litigants are remitted solely to the courts of law for the ascertainment and adjudication of their rights the better.

· The fact that the administrator has not the fund in his possession is no reason why the action of the lower court should not be sustained.  It was his duty. to reduce the assets of the estate, including the debts due the estate by the heirs, to possession to the end that there could be distribution made.  And to accomplish this he had the right, as we have seen, to invoke the aid of a court of equity.  The fund is conceded to have been in the rightful custody of the court and all the parties making claim thereto or in any way interested therein were properly before it, so that there was no difficulty in the way of its making such a disposition of the fund as seemed to it warranted by the circumstances of the case.

We think the decree was clearly for the right party and should be affirmed, which is accordingly so ordered.  All concur.