WALTER H. JOHNSTON, RESPONDENT, v. HATTIE E. DICKERSON, APPELLANT.—127 S. W. (2d) 64.

Kansas City Court of Appeals.   April 3, 1939.

*Homer B. Harris, A. F. Harvey* and *Wright & Ford* for appellant.

*J. Dorr Ewing* for respondent.

SHAIN, P. J.—This is a suit in equity wherein the plaintiff, Walter H. Johnston, remainderman in title to real estate, seeks to have a receiver appointed to take charge of, manage and control said real estate, and out of the rents and profits of said real estate to pay the interest upon an indebtedness secured by a deed of trust on said real estate and also all liens and charges against said real estate. The defendant Hattie E. Dickerson was, prior to the institution of the suit, a life tenant in possession and control of said real estate. The findings and decrees of the circuit court were for the plaintiff and the defendant has appealed.

For continuity, we shall continue to designate the respondent as plaintiff and the appellant as defendant.

As gleaned from the record, the facts and circumstances out of which the action grows are briefly as follows: One Isaac S. Dickerson of Nodaway County died testate and at the time of his death he was the owner in fee of one hundred and twenty-eight acres of real estate in Nodaway County, Missouri, which was unencumbered, and in his will this real estate was willed and devised to his wife, the defendant herein, for life with remainder to his grandson, the plaintiff herein. It appears that administration was duly had in Nodaway County, Missouri.

It is shown that there was filed and allowed claims against the estate of Isaac S. Dickerson, deceased, as follows: To the Bedford National Bank of Iowa, three notes totaling $1350.15 and accumulated interest; to his wife, the defendant herein, an indebtedness of $1000; and to Erma Grace Johnston, a daughter of Isaac S. Dickerson, deceased, and mother of plaintiff, $2000.

It appears that a note for $780, a portion of the indebtedness due the Bedford National Bank, was the debt of the plaintiff herein. In other words, the grandfather had signed a note for $780 for his grandson and had made a payment on same of $169.95 prior to his death.

It is not shown whether or not this indebtedness of plaintiff was inventoried as an asset of Isaac S. Dickerson's estate. However, it appears that the aforesaid indebtedness of plaintiff to the estate of his grandfather at the time of his death, stands undisputed. It stands admitted that at the time of his death Isaac S. Dickerson did not have

sufficient assets outside of the one hundred twenty-eight acres of land, aforesaid, to satisfy the debts listed as aforesaid.

Confronted with the situation, as outlined above, it is shown that the following agreement in writing was entered into, to-wit:

"This contract made and entered into this 21st day of January, 1933, by and between Hattie E. Dickerson, Walter H. Johnston, Erma Grace Johnston and Cina J. Thompson, parties of the First Part and the Bedford National Bank, of Bedford, Iowa, a National Banking Corporation, party of the Second Part, witnesseth:

"That one Isaac S. Dickerson of Nodaway County, Missouri, departed this life on or about January 8, 1932, testate, his said will being duly proved and admitted to probate by the Probate Court of Nodaway County, Missouri, and is now in course of administration therein, with Hattie E. Dickerson, his widow, and Walter J. Johnston, executors thereof; that at the time of his death the said Isaac S. Dickerson was indebted to the Bedford National Bank, Bedford, Iowa, Second Party hereto, which indebtedness has been duly allowed by the Probate Court of Nodaway County; that he was indebted to the said Hattie E. Dickerson in the sum of $1,000.00 and to his daughter, Cina J. Thompson, in the sum of $2,000.00 and accrued interest thereon.

"It is further agreed that there is insufficient personal property in the hands of the executors of said estate to pay and discharge the indebtedness allowed by the Probate Court against said estate.

"It is therefore agreed by and between the parties hereto that in order to preserve the interest of the parties interested in said estate that the said Cina J. Thompson shall release and disclaim all claim under said indebtedness above described against said estate and allowed by the court and release the same from record and that the said Hattie E. Dickerson shall release and disclaim all interest in the debt of $1,000.00 allowed to her against the estate of the said Isaac S. Dickerson and release the same from the records of said court.

"It is further agreed by and between the parties hereto that the said Hattie E. Dickerson in her own right and the said Walter H. Johnston and Erma Grace Johnston shall execute their promissory note, payable to the Bedford National Bank, Bedford, Iowa, secured by deed of trust on the North One Hundred Twenty-eight acres of land of the Northwest Quarter of Section Two (2), Township Sixty-Six (66) Range Thirty-four (34), Nodaway County, Missouri, with interest at the rate of 6 per cent per annum, payable on or before ten years after date thereof, in the amount of the indebtedness of the said estate of Isaac S. Dickerson, allowed by the Probate Court of Nodaway County, Missouri, at final settlement and in addition thereto a sum sufficient to pay the cost and expenses of administration of said estate in the Probate Court of Nodaway County, Missouri.

"It is further agreed and understood that should the said Hattie E. Dickerson fail to pay the interest due for any year, as above set forth, then it is agreed and understood that the said Walter H. Johnston and Erma Grace Johnston may pay said interest to preserve their interest in said land and should the said Walter H. Johnston and Erma Grace Johnston pay said interest the payment of same by them shall operate as if paid by the said Hattie E. Dickerson and will not be regarded as a default in the payment of said interest nor permit or allow the said Walter H. Johnston or Erma Grace Johnston a right to foreclose on account of default in the payment of the said Hattie E. Dickerson in any manner.

"Deed of trust and note to be drawn in conformity of the above contract under the laws of the State of Missouri, with the provision that the same shall not be foreclosed until the interest shall be in default for one year.

"For the faithful performance of this contract the parties hereto bind themselves, their heirs, executors, administrators and assigns firmly by these presents.

"In Witness whereof the said parties have hereto set their hands the day and year first above written.

"Mrs. Hattie E. Dickerson
"Walter H. Johnston
"Irma Grace Johnston
"Cina J. Thompson
"Bedford Nat'l Bank by
"W. W. Crum, Jr. Pres."

It appears that by virtue of the carrying out of aforesaid agreement, the estate of Isaac S. Dickerson was wound up in the probate court.

It appears from the record that in pursuance with the above agreement, the plaintiff and defendant executed their note to the Bedford National Bank in the sum of $1816 and secured same by a deed of trust to the bank on the one hundred twenty-eight acres to secure said note.

It appears that from and after the execution of aforesaid note and deed of trust, the defendant continued in possession of the real estate, exercising control and management thereof, and receiving of the fruits and profits thereof.

Insofar as the record herein shows, the defendant had, prior to the filing of this action, duly paid all taxes on said real estate and kept said real estate free and clear of all claims thereon, save and except the interest on above indebtedness amounting to $367.79.

The substance of the facts, as set forth above, appear in plaintiff's petitions and based thereon plaintiff avers as follows:

"Further answering, and for her cross bill, defendant states that on or about the 2nd day of July, 1931, the plaintiff executed and

delivered, to the Bedford National Bank as maker, his promissory note, Isaac S. Dickerson signing the same as surety, by which plaintiff agreed to pay the Bedford National Bank, six months after that date, the sum of $780.00 with interest thereon from date at the rate of 8 per cent per annum, payable annually; that afterwards there was paid on said note, by the said Isaac S. Dickerson, the sum of $169.95 and that the said plaintiff paid no part of said note nor has he reimbursed the said Isaac S. Dickerson or his estate for the said sum of $169.95 so paid on the debt of the said plaintiff; that the balance due on said note, being the said sum of $169.95 and interest thereon constitutes a part of the indebtedness represented by the note executed by plaintiff and defendant and delivered to the said Bedford National Bank and secured by a deed of trust, as set out in plaintiff's petition; that by reason of the premises above enumerated, a portion of the indebtedness due the Bedford National Bank equaling the said sum of $780.00 and the interest thereon from said 2nd day of July, 1931, is the indebtedness of plaintiff alone and the same should be made a lien on his interest in said real estate and he should be required to pay the principal of said note and the interest on said proportionate part of said indebtedness.

"Wherefore, defendant prays that said plaintiff be declared to be the primary debtor of the Bedford National Bank as to said indebtedness and be required to pay the principal and the interest on said proportionate part of said indebtedness and that defendant be relieved of paying any part thereof in so far as plaintiff is concerned and that defendant have such other and further relief as to the Court may seem meet and proper, the premises considered.

"Homer B. Harris and
"Wright & Ford,
"Attorneys."

The defendant makes assignment of errors as follows:

### "I

"The court erred in finding the issues for the plaintiff.

### "II

"The court erred in holding that the life tenant should pay all of the interest on the debt.

### "III

"The court erred in ruling that the life tenant was required to pay the interest on that part of the joint debt representing the primary obligation of the remainderman.

## "IV

"The court erred in his ruling that the life tenant must pay the interest on the whole of an encumbrance that is put on the land by the life tenant and the remainderman by their joint action."

The defendant urges that, as she obligated herself when she signed and executed the note and deed of trust to pay the obligation of $780 and interest owed by plaintiff, she has the right of an equitable set off, the same as her husband would have had if living. The defendant bases her contention upon the general rule of descent and distribution by payment *pro tanto* on debt of a distributee to the estate by applying proceeds of the monies coming to said distributee out of funds on hand for distribution. [Hopkins v. Thompson, 73 Mo. App. 401.]

The further contention is made that by execution of note and deed of trust to bank, defendant thereby became surety, instead of her deceased husband, for plaintiff insofar as the $780 debt is concerned. Defendant's above claim appears as based upon the principle that an implied contract of indemnity took immediate effect upon the giving of the note and deed of trust to the bank.

We gather from defendant's brief that her position is that as the giving of the note and deed of trust in question inured to the benefit of both plaintiff (remainderman) and defendant (life tenant) that therefore the general rule to the effect that life tenant in possession and enjoying the fruits must pay interest on the indebtedness does not apply. Such position appears to be of some analogy with comments in Esty v. Commerce Trust Co., 64 S. W. (2d) l. c. 615, pars. 6-8, also reported in 333 Mo. 977.

In addition to the above, defendant urges that "He who seeks equity must do equity." "Equity regards substance rather than form." "Equity imputes an intention to fulfill an obligation." The above well-founded principles require no citation in support. As to their application to the issues at bar, we do not here comment.

The plaintiff in his brief urges the application of principles of law and equity, that need no citation of authority, as follows:

## "I

"A life tenant must keep down interest accruing during the continuation of his estate, to the extent of the rents and profits.

## "II

"The court should construe the contract most equitably to the parties.

## "III

"The contract settling the indebtedness to Bedford National Bank, should be construed in light of the circumstances surrounding the parties.

## "IV

"It was entirely competent for parties to substitute a new contract in lieu of original indebtedness of plaintiff."

### Opinion.

In reviewing this we make our own findings of fact and law, however, with due deference and consideration of and to the findings of the trial court, and giving due consideration of the opportunities had by the trial court that the printed record may not reveal.

The trial court after finding of issues in favor of plaintiff and against defendant proceeds to make specific findings as follows:

"The court doth further find defendant is obligated to pay the interest on the encumbrance on the real estate hereinafter described of which defendant is the owner of a life estate to the extent of the issues and profits from the land, and that defendant has failed to pay the interest on the encumbrance to the Bedford National Bank of Bedford, Iowa, recorded in the Deed of Trust records of Nodaway County, Missouri, in Book 170 at page 323 in the principal sum of $1,816.00, which deed of trust conveys the following described real estate situate in the County of Nodaway and State of Missouri, to-wit:

"All of the North 128 acres of the Northeast Quarter of Section Two (2), Township Sixty-six (66), Range Thirty-four (34) West, to secure the payment of said principal indebtedness of $1,816.00 with interest at the rate of 6 per cent per annum, payable annually."

The trial court made further finding, that failure of defendant to pay interest constituted a waste and that plaintiff had no adequate remedy at law. Further, that receiver should be appointed to take charge of the real estate in question. The decree states, further, as follows:

"That said receiver shall lease the above described premises and out of the rents, issues and profits, convert the proceeds thereof to cash and out of the proceeds pay first, the expenses incident to this receivership; second, the taxes on all of the real estate hereinbefore first described, and the interest which has now or may hereafter accrue on the encumbrance to the Bedford National Bank of Bedford, Iowa, and pay the balance, if any, to Hattie E. Dickerson.

"The court further finds that it is necessary that the interest of Hattie E. Dickerson in and to all crops grown or harvested in the year 1937 and during the pendency of this proceeding be taken charge of by said receiver and disposed of by said receiver to the best advantage for cash."

The judgment was duly entered, as based upon the above, and designated Milo Allison of Nodaway County, Missouri, as receiver to "lease and manage the above described real estate and sell crops

grown thereon for the year 1937, as in the judgment of said receiver may seem to the best interest of the parties hereto, and to convert the rents, issues and profits to cash at such times and for such amounts as to said receiver may seem proper and pay, first, the expenses incident to this receivership; second, the taxes on all of the real estate hereinbefore first described and the interest which has now or may hereafter accrue on the encumbrance to the Bedford National Bank of Bedford, Iowa; third, to pay premiums on insurance to keep premises insured to the amount of the insurable value, payable to Walter H. Johnston and Hattie E. Dickerson, with mortgage clause making loss, if any, payable to Bedford National Bank to the extent of its encumbrance on the real estate; and pay the balance, if any, to Hattie E. Dickerson, and that he make annually reports of his receipts and expenditures; lastly, that plaintiff have and recover costs in this behalf expended taxed at $———— and that execution issue therefor.''

The matters herein being reviewed require consideration of the written agreement, *supra,* between the parties and the Bedford Bank. The paragraph in said contract, relative to payment of interest, brings confusion rather than clearness, in that it is provided that Walter H. Johnston, the plaintiff, and Cina J. Thompson, his mother, ''may pay said interest to preserve their interest in said land.'' We find nothing in the record from which we conclude that Mrs. Thompson has any interest in said land to preserve. The consideration in said contract appears to be ''to preserve the interest of the parties interested in said estate.'' It is not shown that Cina J. Thompson had any interest in said estate other than her $2000 claim and this she released.

We conclude that resort must be had to the oral testimony for such aid as it may give, to an understanding of the situation.

Mrs. Cina Johnston is shown called as a witness by plaintiff in rebuttal and the following questions and answers appear:

''Q. You are Mrs. Cina Johnston, mother of the plaintiff Walter H. Johnston? A. Yes, sir.

''Q. It appears, Mrs. Johnston, that you had, at the time of your Father's death, a two thousand dollar note signed by your Father? Did he owe you? A. Yes, sir.

''Q. What was your purpose in cancelling the two thousand dollar debt? A. I cancelled it because I thought I was helping Mr. Johnston to hold his share in the home.

''Q. Mr. Dickerson had a note of one thousand dollars on your Father, and you had a note of two thousand? A. Yes, sir.

''Q. Well, why did you cancel? A. There was no money to settle the indebtedness of the place or the debts and I felt if I cancelled

this, I would help my son hold the interest in the home he was to receive."

It is evident that Cina J. Thompson, who signed the contract and the witness Cina Johnston are one and the same. Under the will, her son, the plaintiff, was willed and devised remainder in the one hundred twenty-eight acres subject to the life estate of defendant. Thus is supplied the real consideration for Mr. Thompson signing the contract.

It is contended by plaintiff that this consideration, for Mrs. Thompson signing the contract, satisfied and extinguished plaintiff's $780 note. Such conclusion is not entirely conclusive in light of the fact that the defendant, when he signed the note to the bank, made himself liable for the payment of an indebtedness which included the unpaid balance on said note. However, this may be, we hold that, if so concluded, same is not conclusive of the equitable issues presented for consideration as between the parties to this suit.

To the rightful consideration of the equities as between plaintiff and defendant, consideration must be given to the fact that the defendant not only relinquished her $1000 claim, but obligated herself not only upon notes made directly by her husband; but also to the balance on the note of defendant. Further, the defendant obligated herself to pay an additional amount $400 for administration expenses.

We conclude that in equity we must give consideration of the value of defendant's claim against the estate, plus the amount of indebtedness she obligated herself to pay, as compared to the value of a life estate in the one hundred twenty-eight acres in question that enured to her by reason of her act.

On the other hand, we conclude as to plaintiff, we must also take into consideration that a part of the obligation he assumed by giving the note and deed of trust to the bank was an obligation that he already owed, and take note of the fact of the value of the fee, subject to the life estate, that enured to him by reason of his act.

In connection with the above, we must examine the oral testimony touching the matter of the unpaid interest in controversy and from a consideration of the whole do equity.

There is one witness called who throws much light upon the matters herein in controversy. Mr. W. E. Crum, Jr. the President of the Bedford National Bank and signer to the written agreement, *supra,* was called as a witness by defendant. We quote questions and answers of this witness on direct examination as follows:

"Q. Mr. Crum, did you talk to Mr. Johnston and Mrs. Dickerson after the contract was drawn, with reference to the interest that was due? A. I talked to Mr. Johnston.

"Q. When was that? A. It was after the interest had come due and Mrs. Dickerson had not paid it.

"Q. What did Mr. Johnston say? A. Well, I think he approached me on buying this mortgage and I did not want to sell it, because I felt they would foreclose it and cut off the life estate and I told him it was up to him to pay that interest.

"Q. What did he say? A. That he was not going to and that was about the end.

"Q. Did he deny that he had agreed to pay it? A. No, sir, he didn't."

On cross-examination, as follows:

"Q. You are a licensed attorney? A. I am but I have not practiced since I have been in the bank to any extent.

"Q. In this transaction you were representing Mrs. Dickerson? A. No, sir.

"Q. Who were you representing? A. The Bedford National Bank.

"Q. You have advised Mrs. Dickerson and told her what to do? A. To a certain extent I have. Not as a lawyer but just as one business person with another in caring for their property.

"Q. You say at the time this contract was made, the understanding was that Walter Johnston was to pay this interest if she could not make it off the place? A. Yes, sir.

"Q. Is that what was said there—that he was to pay it, if Mrs. Dickerson could not make it off the place? A. Of course we knew she had to have money to live and if she did not have enough left, he was to take care of it.

"Q. He was to keep her? A. Oh, no. He was going to live on the place and manage it and keep things going.

"Q. You say Mr. Johnston wanted to buy the note? A. No, he wanted to know if the Bank would sell it.

"Q. And you refused to sell the note? I have, yes, sir.

"Q. Because you were taking care of Mrs. Dickerson? A. No, I felt she was a widow and the rest were trying to get rid of her, and if I could help her out I would.

"Q. It is an unusual situation for you to want to carry a loan that has been in default a number of years? A. I will agree with you on that, but it was through sympathy for her."

The disclosed attitude of the above witness is conducive of confidence in his words.

The plaintiff took the stand as a witness in his own behalf. That his testimony is void of bearing upon the equities in this cause can best be shown by including all of same as it appears in the record, to-wit: "My name is Walter H. Johnston, the plaintiff in this case. I farmed the Dickerson land in 1933 and 1934. In 1933 it was farmed for the estate and I do not know how much corn was raised. It was not kept separate. We sealed two hundred eighty bushels and Mrs. Dickerson got that. It was sold at 50 cents per bushel so she got

$140.00. She also got 102 bushels of wheat and it was worth about 80 cents per bushel. She furnished all the seed. That was about twenty bushels. It cost about $16.00 and the threshing cost about $7.00.

"I also farmed the land in 1934. That was the drouth year. She had some fodder that she sold for $25.00 and soy beans that she sold for about $75.00. Cash rent $150.00. We also had about twelve hundred bushels oats and she got six hundred. They were worth about twelve cents per bushel.

"It is agreed that the corn-hog payment was $41.26 and the wheat payment $62.60; that Mr. Dickerson got one-third of the wheat money or $62.06 in all.

"Frank Thummell farmed the place in 1935. Mrs. Dickerson got a little over three hundred bushels of corn that year. Corn was worth 60 cents that fall. Her part of the wheat money was $24.25 and other Government money all amounting to $50.75.

CROSS-EXAMINATION.

"I do not know anything about the expense incurred in 1935."

It is significant that neither the plaintiff nor any other witness took the stand and contradicted the testimony of Mr. Crum of the Bedford Bank.

In determining the equities in this case, we conclude that the matter of rents and profits and expenses for operating and management must be taken into account. Outside of the plaintiff himself, the plaintiff offered but one witness on such issue.

Plaintiff called Bruce Williamson who lived on the farm in 1936. This witness testified as to his estimate of the rental value being $360 per year. However, his estimate of the value of the products raised fall far short of the above estimate and matters of expenses not accounted for. No other witness was called by plaintiff on question of rents and profits.

The defendant took the stand in her own behalf. She testified that in the year 1933 she had an income off the place of $303.24 and expenses of $165.24. Concerning said testimony, the following appears:

"Q. Income, $404.24? A. Yes, sir.

"Q. So there was $125 you had to live on?

"MR. EWING: We object to that as immaterial.

"The COURT: Sustained. Not a question of what she had to live on but what the property produced."

The above indicates what we conclude from a careful study of the whole record in this case, to-wit: That the trial court has failed to give due consideration of allowance to the defendant for the "care, custody and control and management" of the land, as is alleged in plaintiff's petition. Such is inconsistent with the judgment and decree of the court in appointing a receiver and providing remuneration for these very matters.

The testimony of the defendant fixes rents and profits for 1934 at $136.30 and expenditures at $145. The witness testified to receipts for 1935 as $267.44 and expenditures as $106.13. The witness also testified to receipts in the year the suit was filed as $122.50 and expenditures as $102.11. The amounts of expenditures include no item of pay to defendant for her services in operating and managing the farm.

We have gone into the facts and circumstances in this case minutely and state our conclusions as follows: Under an interpretation of the written contract aided by the testimony of Mr. Crum, above set forth, we conclude that as between the plaintiff and defendant and the bank, the agreement was that plaintiff was to pay the interest if defendant could not make it off the farm. We conclude that the evidence falls far short of showing that with any reasonable amount of allowance for management, the revenues arising from the farm met the expenses of upkeep, taxes and interest. Further, we infer from the evidence that the plaintiff in this case has signed a joint note to the Bedford Bank wherein he has legally obligated himself to pay the interest involved. Further, we conclude from all the facts and circumstances disclosed by the evidence that plaintiff is not invoking equity with clean hands.

We further conclude that while the general rule is that a life tenant, in possession and enjoying the fruits of property subject to encumbrance is within the limit of the produced revenue obligated to pay the interest, still we hold that the exception to the general rule as laid down in 21 Corpus Juris, page 598, par. 94, has direct application to the issues presented by the record in this case.

We quote from the above citation:

"But this rule does not apply where there is a general charge of all the testator's debts on his real estate, in the event that the personal estate proves insufficient to pay them."

For reasons set forth above, the judgment is reversed. All concur.